UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA, *ex rel.*
PHILLIP S. SCHAENGOLD,

**Plaintiff-Relator**

v.           4:11-cv-58

MEMORIAL HEALTH, INC., et al.

**Defendants.**

## ORDER

Before the Court are Defendants' motions to strike. The first is Defendants' Motion for Protective Order Regarding Inadvertent Disclosure of Privileged Document and Motion to Strike Paragraphs 67, 68, and 69 of the Government's Complaint in Intervention. ECF No. 78. The second is Defendants' Motion to Strike the Second Sentence of Paragraph 93 of Relator's First Amended Complaint. ECF No. 82. Defendants argue that the referenced material in both the United States' ("Government") and Phillip S. Schaengold's ("Relator") Complaints is protected by attorney-client privilege. ECF Nos. 79 at 1; 81 at 1.

For the reasons set forth below, the Court **DENIES** both of Defendants' motions to strike.[1]

---

[1] On October 24, 2014, both the Government and Relator filed responses to the motions at issue here. ECF Nos. 88; 89. On November 3, 2014, Defendants filed a notice of intent to file reply briefs in support of their motions. ECF No. 92. The Court will not wait on Defendants' replies, because their notice failed to observe Local Rule 7.6's mandate that parties immediately notify the Clerk of their intent to file reply briefs. *See* LR 7.6, SDGa.

## I. BACKGROUND
### A. Government's Complaint in Intervention

The Government's Complaint references a draft version of a PowerPoint presentation ("Draft Document"). ECF Nos. 50 at 15-16; 79 at 2. Defendants allege that they inadvertently produced the Draft Document in response to a Government subpoena that ultimately "produced roughly 30,000 documents" while represented by a previous attorney ("Prior Counsel"). ECF No. 79 at 1-2. Defendants state that their "executive officers [had] provided Prior Counsel with a copy of the Draft Document for the purpose of obtaining Prior Counsel's legal advice." *Id.* at 2. Defendants stress that, on advice of Prior Counsel, they removed certain language from the Draft Document that was not included "in the final, non-privileged, version of the document." *Id.* Therefore, Defendants claim that, as a result of this communication with and advice from Prior Counsel regarding the Draft Document, the Draft Document is privileged. *Id.* at 2-3.

Defendants, now represented by a different attorney ("Current Counsel"), assert they did not learn that the Draft Document was privileged until October 6, 2014. *Id.* at 3. Current Counsel then "requested that the government return all copies of the privileged document" and, on October 7, 2014, filed this motion seeking a protective order and to strike paragraphs referencing the Draft Document from the Government's Complaint contemporaneously with a motion to dismiss the

Government's Complaint. ECF Nos. 73; 78; 79 at 3.

### B. Relator's Complaint

Relator Phillip S. Schaengold ("Relator") filed his First Amended Complaint in this case on August 8, 2014. ECF No. 51. Paragraph 93 of the Complaint states:

> In the spring of 2010, Mr. Schaengold requested that a Fair Market Value physician compensation review be conducted by an outside consulting firm. Memorial's legal counsel retained the firm of Sullivan Cotter to analyze [Defendants'] compensation structure in order to determine whether the compensation arrangement violated the Anti-Kickback Statute, the Stark Law, and the False Claims Act.

*Id.* at 21-22.

Defendants argue that because the second sentence of the quoted paragraph "discusses the retention of an outside consultant by [Defendants'] legal counsel," it is protected by Defendants' attorney-client privilege and, therefore, "Relator is not authorized to disclose this information and was not permitted to include the information in his public filing." ECF No. 81 at 1-2. Accordingly, Defendants filed this Motion to Strike the Second Sentence of Paragraph 93 of Relator's First Amended Complaint. ECF No. 82.

## II. ANALYSIS

### A. Rule 12(f) and the Nature of Motions to Strike

"Pursuant to Rule 12(f), a district court may strike from a pleading 'any redundant, immaterial, impertinent, or scandalous matter.'" *Bethel v. Baldwin Cnty. Bd. of Educ.*, 371 F. App'x 57, 61 (11th Cir. 2010) (quoting Fed. R. Civ. P. 12(f)). Ruling on 12(f) motions is committed to the discretion of the Court, but "'such motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion.'" *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (quoting *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985)). To put a point on it, courts in the Eleventh Circuit generally view 12(f) motions as "time wasters." Such motions "'waste time by requiring judges to engage in busy work and judicial editing without addressing the merits of a party's claim.'" *Regions Bank v. Commonwealth Land Title Ins. Co.*, 2012 WL 5410609, at *2 (S.D. Fla. Nov. 6, 2012) (quoting *U.S. Bank Nat'l Ass'n v. Alliant Energy Res., Inc.*, 2009 WL 1850813, at *3 (W.D. Wis. June 26, 2009)). This Court views motions to strike with similar disaffection.

This is not to say granting a motion to strike is never proper. If the Court finds that "it is *clear* from the face of the pleadings that the matter sought to be stricken has no possible bearing on the controversy," then it may grant a motion to strike. *See Wachovia Bank, Nat'l Ass'n v. Lone Pine, Inc.*, 2010 WL 2553880, at *2 (N.D. Ga. June 15, 2010) (emphasis added).

Here, Defendants seek to have references to material and communications stricken from Government's and Relator's Complaints on the basis of attorney-client privilege. While not squarely within the

grounds for a motion to strike under Rule 12(f), courts have considered motions to strike based on attorney-client privilege as motions to strike impertinent material since privileged material is "not able to be discovered and presented at trial." *See, e.g., Otero v. Vito*, 2005 WL 1429755, at *1 (M.D. Ga. June 15, 2005). Therefore, if the Court finds that the second sentence of paragraph 93 in Relator's Complaint is protected by attorney-client privilege, it can strike that sentence from the pleading. Still, striking material from a pleading "'is a drastic remedy to be resorted to only when required for the purposes of justice.'" *See Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)); *see also Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, 2011 WL 5829674, at *2 (N.D. Ga. Aug. 1, 2011) (same).

### B. Attorney-Client Privilege

"The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). To carry this burden, "it must be shown that 'the communication was made to [a lawyer] confidentially, in [the lawyer's] professional capacity, for the purpose of securing legal advice or assistance.'" *Id.* (quoting *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973)). "To determine if a particular communication is confidential and protected by the attorney-client privilege, the holder must prove the communication was '(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential.'" *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003).

Moreover, the burden of sustaining a claim of privilege is a "heavy" one. *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011). Privileges are neither "lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Plainly, "'[t]he burden is not . . . discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Bridgewater*, 286 F.R.D. at 639 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)).

Thus, Defendants' burden here is doubly high: they must first shoulder the heavy burden of claiming privilege, and then they must clearly show that the attorney-client privilege covers the material referenced in the Relator's and the Government's Complaints and is therefore impertinent and properly subjected to a motion to strike. Defendants' motions fail on their first task, establishing privilege.

1. **Defendants Have Not Properly Claimed Privilege as to the Draft Document Referenced in the Government's Complaint**

In order to establish that the Draft Document is privileged, Defendants must prove the following elements: (1) Defendants were clients; (2) the person to

3

whom the Draft Document was sent was a member of the bar and was acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which Defendants informed the attorney without the presence of strangers for the purpose of securing legal advice; and (4) Defendants claimed and have not waived the privilege. *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990). Defendants assert that the Draft Document is privileged because Defendants' "executive officers provided Prior Counsel with a copy of the Draft Document for the purpose of obtaining Prior Counsel's legal advice" and "Prior Counsel advised that certain language should be removed from the Draft Document." ECF No. 79 at 2.

However, the fact that a communication was sent to Defendants' lawyer requesting legal advice regarding the Draft Document does not necessarily show that the communication was privileged. "Rather, Defendants must show, irrespective of whether one or more lawyers sent or received the communication, that the communication was confidential and that the *primary* purpose of the communication was to relay, request or transmit legal advice." *United States v. Davita, Inc.*, ___ F.R.D. ___, 2014 WL 4116590, at *3 (N.D. Ga. Mar. 31, 2014) (emphasis added). That Defendants have provided the Court with Prior Counsel's declaration stating that the Defendants' executives sent the Draft Document to him for legal review simply is not enough to establish privilege.

Generally, a party meets its burden of asserting the attorney-client privilege "'when the party produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel.'" *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007) (quoting *Triple Five of Minn., Inc. v. Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002). To be sure, some courts have recognized that an affidavit alone may be sufficient to establish privilege. *See, e.g.*, *Bridgewater*, 286 F.R.D. at 639. However, "'[u]nless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege. . . .'" *Id.* (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974)).

Prior Counsel's declaration fails because it does not provide a precise factual basis of all elements to be satisfied. That is, Prior Counsel's declaration fails to show who exactly sent the Draft Document, whether the *primary* purpose of the communication was for legal advice, or whether the communication was indeed confidential. Inasmuch as Prior Counsel asserts that the Draft Document, in his opinion, was privileged and that it was communicated to him for the purposes of obtaining legal advice, ECF No. 77 at 4 (Sealed Declaration of T. Mills Fleming), such statements do not carry Defendants' burden. To reiterate, the burden of establishing privilege is heavy and is not "'. . . discharged by mere conclusory *ipse dixit* assertions." *Bridgewater*, 286 F.R.D. at 639 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)).

Conscious that a claim of privilege is serious business in that such a claim is "in

derogation of the [Court's] search for truth," *see Nixon*, 418 U.S. at 710, yet mindful of the long recognized importance of the attorney-client privilege, *see, e.g., Hunt v. Blackburn*, 128 U.S. 464, 470 (1888), the Court finds that Defendants have failed to establish the requisite elements of a proper claim of privilege. While the Court notes some factors indicative of privilege, it would be improper for the Court to expansively construe the requirements of the attorney-client privilege to find a proper claim of it on the facts submitted here. *See Nixon*, 418 U.S. at 710.

Therefore, because the Court finds that Defendants have not properly asserted the claim of privilege as to the material referenced in the Government's Complaint, the Court cannot conclude that the Draft Document is privileged. *See Bridgewater*, 286 F.R.D. at 639 ("'An improperly asserted claim of privilege is no claim of privilege at all.'" (quoting *Int'l Paper Co.*, 63 F.R.D. at 94)).

### 2. Defendants Have Failed to Establish the Communication Referenced in Relator's Complaint is Privileged

The extent of Defendants' claim of privilege as to the communications allegedly referenced in Relator's Complaint is that "[t]he second sentence of paragraph 93 of the Complaint discusses the retention of an outside consultant by Memorial's legal counsel. This discussion and information related to Memorial's legal retention of the outside consultant is protected by Memorial's attorney-client privilege." ECF No. 81 at 1. In support of this assertion, Defendants cite to a one sentence paragraph in a declaration filed under seal stating that Prior Counsel used materials from an outside consultant for the purpose of providing Defendants legal advice. ECF No. 77 at 5 (Sealed Declaration of T. Mills Fleming).

Beyond being a mere *ipse dixit* assertion of privilege, Defendants claim shows nothing as to the confidentiality of the retention of and the communications between Defendants' legal team and the outside consultants. Relator's Complaint appears to say nothing beyond the mere fact Defendants retained an outside consultant to evaluate their physician compensation arrangement. It is doubtful that the mere fact of retention of an outside consultant is privileged. *Cf. United States v. Robinson*, 121 F.3d 971, 976 (5th Cir. 1997) ("The fact of representation . . . is generally not within the privilege."). To the extent that Relator's Complaint can be read to reference communications, the Court knows nothing about whether those communications were kept confidential and, most importantly, Defendants provide the Court nothing showing that any communication was in fact confidential.

Thus, Defendants have failed to present evidence as to the very essence of attorney-client privilege—i.e., confidentiality. *See Blackburn*, 128 U.S. at 470 ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when

5

free from the consequences or the apprehension of disclosure."). Accordingly, Defendants' claim of privilege fails. *See Bridgewater*, 286 F.R.D. at 639 ("'A failure of proof as to any element causes the claim of privilege to fail.'" (quoting *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 515 (M.D.N.C. 1986)).

### 3. *In Camera* Review

Both Relator and the Government have invited the Court to engage in *in camera* review of the referenced materials. *See* ECF Nos. 90 at 9; 91 at 7-8. The Court declines this invitation.

*In camera* review is not lightly invoked as such review places significant burdens on district courts "which may well be required to evaluate large evidentiary records without open adversarial guidance." *See United States v. Zolin*, 491 U.S. 554, 571 (1989). Thus, the Supreme Court has held that

> [b]efore engaging in *in camera* review to determine the applicability of the [attorney-client privilege], 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence to establish the claim that the [attorney-client privilege] applies."

*Id.* at 572 (citation omitted) (quoting *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)).

Plainly, *in camera* review "is not to be used as a substitute for [Defendants'] obligation" to properly claim attorney-client privilege. *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 700 (D. Nev. 1994) (citing *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 253 (D.C. Cir. 1993)). Accordingly, resort to *in camera* review is proper only after the party claiming attorney-client privilege has properly claimed privilege and has submitted evidence sufficient to support a good faith belief that such review may reveal evidence establishing the attorney-client privilege. *See Zolin*, 491 U.S. at 572; *Diamond State Ins. Co.*, 157 F.R.D. at 700.

Defendants have failed to properly claim privilege and to present more than conclusory, *ipse dixit* assertions of privilege. Therefore, the Court declines to engage in *in camera* review because Defendants have failed to give the Court reason to believe that such review may uncover evidence establishing privilege.

### C. Federal Rule of Evidence 502(b)

Even assuming *arguendo* that the Draft Document referenced in the Government's Complaint is privileged, Defendants have not met their burden in showing the applicability of Federal Rule of Evidence 502(b). Under Federal Rule of Evidence 502(b), inadvertent disclosure of privileged material "does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error . . . ." Fed. R. Evid. 502(b). As the party claiming the protection of Rule 502(b), Defendants have the burden of proving that the elements of the Rule apply. *See United States v. Mackey*, 2012

WL 3260462, at *3 (N.D. Ga. Aug. 8, 2012).

While Rule 502(b) sets out three elements that must be met to invoke the protections of the inadvertent disclosure rule, waiver of privilege under the Rule is a flexible analysis. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 2322678, at *10 (S.D.N.Y. May 21, 2013). Seeking to rectify the harsh results of subject-matter waiver due to inadvertent disclosures, the Advisory Committee takes a "middle ground" as to waiver. *See* Fed. R. Evid. 502 explanatory note at Subdivision (b). The touchstone of the waiver analysis is reasonableness. *See id.* Thus, "inadvertent disclosure of protected communications . . . in connection with a federal proceeding . . . does not constitute a waiver if the holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error." *Id.*

Although the Advisory Committee lists factors that courts consider in assessing reasonableness—e.g., reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness—it indicates that the relevant factors will "vary from case to case." *Id.* Tracking with the Advisory Committee, courts in the Eleventh Circuit have suggested, though not explicitly considering Rule 502(b), that a "totality of the circumstances" analysis marks the middle ground between automatic waiver and no waiver when considering the consequences of an inadvertent disclosure. *See Koch Foods of Ala. LLC v. Gen. Elec. Capital Corp. (Koch I)*, 531 F. Supp. 2d 1318, 1321 (M.D. Ala.) (considering the effect of an inadvertent disclosure under Alabama law), *aff'd per curiam*, 303 F. App'x 841, 846 (11th Cir. 2008). Courts in other circuits have applied similar totality of the circumstances analysis to questions of waiver under Rule 502(b). *See, e.g., Skansgaard v. Bank of Am., N.A.*, 2013 WL 828210, at *2 (W.D. Wash. Mar. 6, 2013) ("A totality of the circumstances approach is taken to determine whether 'inadvertent' disclosure of privileged information results in a waiver of applicable privileges.") *Peterson*, 262 F.R.D. at 428-29 (applying a five-factor test). "Under the totality-of-the-circumstances test, the court considers five factors: '(1) the reasonableness of precautions; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness.'" *Koch Foods of Ala., LLC v. Gen. Elec. Capital Corp. (Koch II)*, 303 F. App'x 841, 846 (11th Cir. 2008) (construing Alabama rules of evidence) (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993)). In this way, the Rule "eas[es] the wavier doctrine" by allowing parties to corral inadvertently disclosed confidential documents and retain privilege. *See Williams v. Dist. of Columbia*, 806 F. Supp. 2d 44, 49 (D.D.C. 2011).

But "[w]hile an inadvertent disclosure no longer carries with it the cruel cost of subject-matter waiver, Rule 502(b) does not remove the parties' responsibility to take reasonable precautions against disclosure of privileged documents." *Amobi v. Dist. of Columbia Dep't of Corr.*, 262 F.R.D. 45, 53 (D.D.C. 2009). Rather, the reasonableness

of the steps taken to prevent disclosure of privileged material remains a touchstone of waiver analysis "no matter the inadvertency of the disclosure." *Id.*

Here, Defendants aver that the disclosure of the Draft Document was inadvertent. ECF No. 79 at 4. In response to a subpoena, Defendants produced around 30,000 documents, ECF No. 77 at 5 (Sealed Declaration of T. Mills Fleming), and are now claiming privilege as to only one document. For the purpose of analysis, the Court accepts without deciding that Defendants disclosed the Draft Document inadvertently.

That the Draft Document was inadvertently disclosed, however, really is of no moment. The crux of the issue before the Court is whether the privilege review through which the Draft Document slipped was indeed reasonable. To be sure, Defendants argue that their "Prior Counsel conducted a privilege review in an attempt to prevent any disclosure of privileged materials." ECF No. 79 at 4. Prior Counsel seconds that argument, stating that his firm conducted a privilege review which assessed whether "certain" documents were privileged. ECF No. 77 at 5 (Sealed Declaration of T. Mills Fleming). However, the mere statement of a privilege review is insufficient to establish that Defendants took "reasonable steps to prevent an inadvertent production." *See Peterson*, 262 F.R.D. at 429. Notably absent from Defendants' naked assertion of a privilege review is "when [the] review occurred, how much time [Prior Counsel] took to review the documents, what ["certain"] documents were reviewed, and other basic details of the review process." *Id.*

Indeed, one keeps searching for some statement somewhere in the [D]efendants' papers that speaks to what they did when they got the documents, how they segregated them so that the privileged documents were kept separate from the non-privileged, and how, despite the care they took, the privileged document was inadvertently produced.

*Amobi*, 262 F.R.D. at 54.

Thus, as to the first factor under the totality of the circumstances analysis "the Court finds that at best, [Defendants] took minimal steps to protect against inadvertent disclosure." *See Peterson*, 262 F.R.D. at 429. Therefore, Defendants' lack of reasonable precautions for preventing disclosure of privileged material weighs heavily in favor of finding waiver.

As to the second factor, Defendants argue that, although current counsel was retained on August 1, 2014, ECF No. 79 at 3; ECF No. 79-1 at 2, they did not discover "that a copy of the Draft Document had been produced by Prior Counsel" until October 6, 2014. ECF No. 79 at 3. Therefore, so their argument goes, Defendants acted promptly in attempting to remedy the error by immediately contacting the Government and filing this motion the next day. *See id.* at 4. But, in considering whether Defendants promptly sought to rectify the disclosure, the Court looks not only to the promptness of Defendants' response once they claim they discovered the inadvertent disclosure, but also to the reasonableness of the steps taken

8

to discover the error. *See* Fed. R. Evid. 502 explanatory note at Subdivision (b).

It must be remembered that Defendants are asking the Court to strike paragraphs from the Complaint which *quote* the Draft Document. *Id.* at 1. The Complaint, along with the paragraphs quoting the Draft Document, was filed on August 8, 2014. ECF No. 50. Therefore, at bottom, the Defendants ask the Court to find that their swift actions between October 6 and 7 in contacting the Government and filing this motion to strike paragraphs in a Complaint filed at the beginning of August that quotes an alleged privileged document constitute prompt, reasonable steps to rectify an inadvertent disclosure. However, "the more important period of delay in this case is" the over two-month period between the filing of the Government's Complaint and the time Defendants were informed that the privileged Draft Document was disclosed—"a period during which Defendants failed to discover the disclosure." *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 263 (D. Md. 2008). It is this delay that has indeed had a dangerous end for Defendants. *See* WILLIAM SHAKESPEARE, THE FIRST PART OF KING HENRY THE SIXTH act 3, sc. 2.

To be sure, there might be circumstances that would justify such a delay in discovering an inadvertent disclosure or in taking steps to remedy an inadvertent disclosure. Indeed, if there were no cause to believe the Draft Document was privileged until October 6, such a delay in discovery might even be reasonable. If such an explanation for the delay exists here, Defendants have failed to bring it to the Court's attention. Though claiming that it was not until October 6 that Defendants learned of the privileged draft, there is no explanation of the steps taken prior to this discovery, nor is there any explanation as to how the fact of privilege came to Defendants' attention and why the fact of privilege did not come to their attention earlier.

Granted, Federal Rule of Evidence 502(b) does not require that Defendants "engage in a post-production review to determine whether any protected communication . . . has been produced by mistake." Fed. R. Evid. 502 explanatory note at Subdivision (b). What the Rule does require, however, is that Defendants "follow up on any obvious indications that a protected communication or information has been produced inadvertently." *Id.* Here, there is no explanation as to the extent of Defendants' inquiry into the material referenced in the Complaint that is now alleged to be privileged, nor is there an explanation as to why the quoted portions of the Draft Document referencing an editing process were not an obvious indication that privileged information had been inadvertently produced.

Without an explanation for the over two-month delay in taking steps to remedy the alleged inadvertent disclosure, the Court cannot find that Defendants promptly took reasonable steps to remedy the disclosure. Therefore, the second factor as to the amount of time taken to remedy the error also weighs heavily in favor of finding waiver.

Factors three and four, the scope of discovery and extent of the disclosure, are related and the Court will consider them

9

together. At first blush these factors appear to weigh heavily in favor of finding no waiver. Of over 30,000 documents produced, Defendants' current motion asks the Court to find that only one document was privileged. However, the Court notes that it cannot say for certain the number of potentially privileged documents that were actually disclosed and, unsurprisingly, Defendants do not reveal just how many potentially privileged documents they suspect might have been disclosed. As such, the Court will not assume that only one potentially privileged document was disclosed. However, it will assume, for purposes of analysis, that only a small percentage of the 30,000 documents produced were potentially privileged. That said, it bears repeating that the touchstone of the Court's analysis of the extent of the disclosure is reasonableness. Accordingly, "the nature of the disclosures is relevant." *See Peterson*, 262 F.R.D. at 429.

Here, the Draft Document for which Defendants claim privilege was attached to a communication that Defendants allege was between Defendants' executives and Prior Counsel for the purpose of obtaining legal advice. "These communications warrant[] a significant level of scrutiny" in conducting a privilege review. *See id.* The fact that Defendants' alleged privilege review overlooked such a potentially sensitive document is troubling and weighs back in favor of finding waiver. Therefore, even though it is likely that only a very small percentage of the 30,000 documents produced are potentially privileged, the sensitive nature of the Draft Document tempers the weight of the relatively small scale of the inadvertent disclosure. Accordingly, the Court finds that while the extent of the inadvertent disclosure relative to the scope of discovery weighs in favor of finding no waiver, it does not weigh as heavily as factors one and two do in favor of waiver.

The fifth factor, the overriding issue of fairness, weighs in favor of waiver here. Quite simply, the interests of fairness would not be served if the Court were to allow Defendants to claim privilege here. "Parties must recognize that there are potentially harmful consequences if they do not take minimal precautions to prevent against the disclosure of privileged documents." *Id.* If the Court were to issue an order now, over two months after the Government cited the Draft Document in its Complaint, it "'. . . would be the equivalent of closing the barn door after the animals have already run away.'" *Amobi*, 262 F.R.D. at 55 (quoting *Victor Stanley, Inc.*, 250 F.R.D. at 263). Federal Rule of Evidence 502(b) does indeed give the Court the authority to do just that. However, the Court will not invoke Rule 502(b) on its own motion. Defendants' task here was to produce sufficient "evidence that they took reasonable efforts to keep the barn door closed." *Id.* Absent such a showing, the Court will not saddle up to corral Defendants' loosed livestock for them. In so finding, "'the only 'injustice' in this matter is that done by Defendants to themselves.'" *Id.* (alteration omitted) (quoting *Victor Stanley, Inc.*, 250 F.R.D. at 263).

On balance, in light of the discussion above, even if the Draft Document is privileged the Court finds that the factors

weigh in favor of finding waiver of privilege as to the Draft Document.

### III. CONCLUSION

The Court finds that Defendants have failed to meet their burden of establishing that the material and communications referenced in the Government's and Relator's Complaints is privileged. Further, even if the Draft Document referenced in the Government's Complaint is privileged, the Court finds that Defendants have failed to meet their burden of establishing that the protections of Federal Rule of Evidence 502(b) apply. Additionally, if the Draft Document is privileged, based on the totality of the circumstances, the Court finds that there is no injustice in finding a waiver of that privilege. Accordingly, the Court concludes that the attorney-client privilege does not protect the materials and communications referenced in the Government's and Relator's Complaints.

Therefore, the Court *DENIES* Defendants' Motion to Strike Paragraphs 67, 68, and 69 of the Government's Complaint in Intervention, ECF No. 78, and Defendants' Motion to Strike the Second Sentence of Paragraph 93 of Relator's First Amended Complaint, ECF No. 82. Further, absent a showing of privilege, the Court finds that no "good cause" exists for issuance of a protective order, Fed. R. Civ. P. 26(c), and *DENIES* Defendants' Motion for Protective Order Regarding Inadvertent Disclosure of Privileged Document. ECF No. 78.

What is left is a cautionary tale to guide this litigation going forward. While disfavored, there are circumstances where motions to strike are warranted. However, Defendants' naked, conclusory arguments were nothing but "time wasters." Defendants' dilatory motions diverted the Court from the merits of this significant litigation. In reaching this conclusion, the Court has thought carefully about whether to invoke its discretion to strike material from the Government's and Relator's Complaints. Going forward, Defendants would do well to do the same before filing such motions, lest they "returneth to [their] folly." *Proverbs* 25:11.

This 5 day of November 2014.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA